**In the Matter of the ESTATE OF Walter A. FAWCETT, Deceased.**

**No. 11–00–00059–CV.**

Court of Appeals of Texas, Eastland.

Aug. 16, 2001.

Ted Hirtz, Houston, Craig S. Smith, Donald Edwards, Corpus Christi, for appellant.

Eric Lipper, Michael D. Conner, James E. Myers, Andrew & Kurth, Robert Oberholtzer, Houston, Stephen L. Schaefer, Stephen L. Schaefer, P.C., Dripping Springs, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

McCALL, Justice.

Betty Witmer (Witmer) appeals the trial court's summary judgment that limitations bar her claims against Franklin M. Cantrell, Jr.; Doris Cantrell; Energy Consultants, Inc. (Encon); and Sabine Gas Transmission Company (Sabine).

Witmer sued the appellees for fraud, breach of fiduciary duty, and breach of contract. Her claims arose from the appellees' alleged failure to disclose the fact that Encon had the opportunity to construct and to operate a natural gas pipeline to supply Gulf States Utilities (GSU) in Beaumont when Witmer, the Cantrells, Walter and Mary Elaine Fawcett,[1] and

---

1. Franklin M. Cantrell, Jr. and Walter A. Fawcett were shareholders with Witmer's husband in Encon. Witmer originally sued Mary Elaine Fawcett and Bank One, Texas, N.A., in their capacities as independent co-executors of the Estate of Walter A. Fawcett, Deceased. Witmer also sued Mary Elaine Fawcett in her individual capacity. On the motion of Mary Elaine Fawcett and Bank One, the district court transferred the case to the Harris Coun-

Encon entered into a Stock Purchase Agreement on February 1, 1984, after the death of her husband, William W. Witmer. Her claims also arose from the appellees' alleged failure to disclose the formation of Sabine for the purpose of constructing and operating the pipeline. The actionable conduct that Witmer pleaded in her petition occurred in and around February 1984. She did not file suit until December 11, 1997. Because we hold that genuine issues of material fact exist as to whether limitations bar Witmer's causes of action, we reverse and remand.

### Standard of Review

The appellees filed a motion for traditional summary judgment on the grounds that the evidence conclusively showed that limitations had run, that the discovery rule did not toll limitations, and that Witmer failed as a matter of law to exercise reasonable diligence in discovering her injury. The appellees also filed a no-evidence motion for summary judgment arguing that, if the discovery rule did apply, Witmer had not produced any evidence that she exercised reasonable diligence.

■■■ A trial court must grant a motion for traditional summary judgment if the moving party establishes that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). A court properly grants summary judgment for a defendant if he establishes all the elements of an affirmative defense. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). Once the movant establishes his right to a summary judgment, the non-movant must come forward with evidence or law that

precludes summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979). When reviewing a summary judgment, the appellate court takes as true evidence favorable to the non-movant and indulges every reasonable inference and resolves any doubts in favor of the non-movant. *American Tobacco Company, Inc. v. Grinnell, supra*; *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

■■■ The trial court must grant a no-evidence motion for summary judgment unless the non-movant produces evidence that raises a genuine issue of material fact on the challenged element of his claim or defense. TEX.R.CIV.P. 166a(i). The appellate court reviews evidence presented in response to a motion for a no-evidence summary judgment in the same way it reviews evidence presented in support of, or in response to, a motion for traditional summary judgment: it accepts as true evidence favorable to the non-movant and indulges every reasonable inference and resolves all doubts in favor of the non-movant. *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614, 619 (Tex.App.—Eastland 2000, pet'n den'd); see *American Tobacco Company, Inc. v. Grinnell, supra*; *Nixon v. Mr. Property Management Company, Inc.*, supra. The appellate court reviews, however, only evidence presented by the non-movant. Rule 166a(i); *Hight v. Dublin Veterinary Clinic, supra* at 618–19. If the non-movant presents more than a scintilla of evidence on the disputed element, a no-evidence summary judgment is improper. *Hight v. Dublin Veterinary Clinic, supra*; *Denton v. Big Spring Hospital Corporation*, 998 S.W.2d 294, 298

---

ty Probate Court No. 2 where the probate of Walter A. Fawcett's estate was pending. After Witmer filed her notice of appeal, Mary

Elaine Fawcett and the Estate settled with Witmer, and Witmer dismissed her appeal as to those parties.

(Tex.App.—Eastland 1999, no pet'n); cf. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997).

### Accrual of Causes of Action; Running of Limitations

When Witmer filed her lawsuit, her breach of contract and fraud claims were governed by the four-year statutes of limitations set forth in former TEX. CIV. PRAC. & REM. CODE § 16.004 (1986) and in TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 1997). See *Fazakerly v. Fazakerly*, 996 S.W.2d 260, 264 n. 3 (Tex.App.—Eastland 1999, pet'n den'd). Since Witmer filed her lawsuit, the legislature amended Section 16.004 to expressly cover suits for fraud. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (Vernon Supp.2001). When she filed her lawsuit, Witmer's claims for breach of fiduciary duty were arguably governed by the two-year statute of limitations set forth in TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon Supp.2001). *Smith v. Chapman*, 897 S.W.2d 399 (Tex.App.—Eastland 1995, no writ). The legislature has since amended Section 16.004 to expressly apply the four-year limitations period to claims for breach of fiduciary duty. Section 16.004(a)(5). Regardless of whether the two-year or four-year period applies, Witmer filed her suit within two years after she claims she was put on notice about the alleged breach of fiduciary duty by the appellees.

■ Accrual of a cause of action is deferred in two types of cases: (1) those involving fraud or fraudulent concealment and (2) those where the injury is "inherently undiscoverable" and is "objectively verifiable." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.1996); *Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996). In *S.V. v. R.V.*, supra at 4, the Texas Supreme Court noted that, strictly speaking, the second type of cases are properly referred to as discovery rule cases; however, three years later the court referred to both types of cases as discovery rule cases. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997). Witmer specifically pleaded the discovery rule, and it is clear from her pleadings and motions that she intended the discovery rule to apply to all of her causes of action.

■ The Supreme Court has noted that the commission of fraud or fraudulent concealment works to estop a defendant from asserting limitations as a defense because "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V. v. R.V.*, supra at 6; see *Computer Associates International, Inc. v. Altai, Inc.*, supra at 455–56; *Nichols v. Smith*, 507 S.W.2d 518, 519 (Tex.1974).[2] Injuries occurring in the context of a fiduciary relationship between the plaintiff and defendant are often analyzed in terms of constructive fraud and would seem to be within the first type of cases. See *Meadows v. Bierschwale*, 516 S.W.2d 125, 128–29 (Tex.1974). The Supreme Court, in-

2. The alleged fraud here was the appellees' representation that all projects were listed, yet the appellees concealed information about the Sabine project. Fraud is a common-law cause of action, but fraudulent concealment is a defense or plea in avoidance to the running of limitations. *Santanna Natural Gas Corporation and Women's Natural Gas Corporation v. Hamon Operating Company*, 954 S.W.2d 885, 890 (Tex.App.—Austin 1997, pet'n den'd). Fraudulent concealment must be pleaded by the plaintiff in a case where the defendant attempts to hide information about the plaintiff's cause of action. See *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983)(doctor allegedly concealed fact of his negligence in leaving a needle in plaintiff's abdomen). Witmer pleaded the discovery rule; it was not necessary for her to plead fraudulent concealment.

stead, has categorized fiduciary duty cases under the second type of cases, but the court holds that the injuries from a breach of fiduciary duty are presumed to be inherently undiscoverable. *Computer Associates International, Inc. v. Altai, Inc.,* *supra* at 456; see *Little v. Smith,* 943 S.W.2d 414, 425 (Tex.1997)(Enoch, J., concurring). The result is the same. Breach of fiduciary duty cases are treated similarly to fraud cases in terms of deferral of the cause of action; the issue is when the plaintiff knew or should have known, with the exercise of reasonable diligence, of her injury.

### The Evidence

The record shows that William W. Witmer, Franklin Cantrell, and Walter A. Fawcett each held one-third of the stock in Encon. William Witmer died in 1983, and Encon, Cantrell, and Fawcett negotiated a Stock Purchase Agreement with Betty Witmer to buy her and her husband's stock. The Stock Purchase Agreement replaced an earlier shareholders' agreement that the appellees represented to Witmer as being too onerous on them. As consideration for selling the shares, Witmer received, among other things, the right to periodic payments of a portion of the "Net Project Revenue" from any asset or project in which Encon was involved and from which it was receiving income as of July 31, 1983. Witmer was also entitled to receive a portion of the net revenue from future projects which Encon had commenced as of July 31, 1983, and from which it expected to receive revenue in the future. Neither the pipeline nor Sabine was listed as a current or future project. Among the current projects that were listed were two contracts for the delivery of gas from Funk Exploration, Inc. to GSU. The parties executed the Stock Purchase Agreement on February 1, 1984. Several days later, Cantrell, Fawcett, and two oth-

ers incorporated Sabine for the purpose of constructing and operating a pipeline to supply natural gas to GSU.

The summary judgment proof includes a memorandum dated April 20, 1983, and addressed to W.E. Harrington of GSU in which William Witmer outlined a proposal for Encon to construct and operate a pipeline to supply GSU with gas. Cantrell, in a letter to Ford, Bacon & Davis Construction Company dated April 5, 1983, requested the firm to create a proposal and estimate for the construction and operation of a 30-inch gas pipeline from the GSU Sabine Power Station to the Texas Eastern Transmission System. The resulting proposal was referenced in William Witmer's memo to Harrington. When Witmer requested copies of the notebooks in which William Witmer kept his business ideas and agendas, Cantrell told her that they had been destroyed.

In 1985, someone at Encon sent Witmer a promotional brochure about the company's business. Besides a photograph of William Witmer and a description of his career, the brochure also included a photograph entitled "SABINE GAS TRANSMISSION COMPANY station near Beaumont, Texas" and the following text:

> In a recent major success, Encon completed construction of the Sabine Gas Transmission Company facilities near Beaumont, Texas. This large diameter pipeline now enables one of the nation's largest utilities to obtain sizeable fuel supplies from both interstate and intrastate sources.

It is not clear from this part of the brochure whether Encon constructed the facilities for someone else or had an ownership interest in them; however, later in the brochure there is a reference to "Sabine Gas Transmission Company, an Encon affiliate." The only utility listed in the back

of the brochure that was located in Beaumont was GSU

Witmer showed the brochure to each of her four children, and she later gave it to the attorney she retained to demand the late payment Encon owed her under the Stock Purchase Agreement. Witmer testified in her deposition that she gave her attorney the brochure only so that he could learn something about the company. Witmer testified that she assumed upon reading the brochure that she had no interest in either Sabine or the pipeline because neither appeared on the list of future projects appended to the Stock Purchase Agreement.

In the early 1990s, Witmer's payments under the Funk contracts began to diminish. Witmer and her attorney employed an investigator to try to determine whether GSU and Encon had entered into other contracts for the supply of gas. The investigator found nothing. In 1996, Witmer's son learned that an acquaintance's boyfriend "worked for Sabine and he worked in Beaumont and they had a pipeline down there that did business with Gulf States." Witmer testified that this information caused her to begin a deeper inquiry into Sabine and the pipeline. This inquiry led to a confrontation with Cantrell. Witmer testified that, in 1997, Cantrell admitted during a lunch meeting with her that the pipeline was William Witmer's idea but that Cantrell and Walter Fawcett had decided to treat it as a "new deal" and not let Witmer share in the project. During his deposition, Cantrell claimed that the lunch meeting was a settlement conference and that any conversation that occurred was privileged; therefore, he did not answer questions about the conversation.

### Fiduciary Duty

 The appellees' original motion for summary judgment did not address whether they owed a fiduciary duty to Witmer. In re-urging their motion for summary judgment, the appellees did claim that no fiduciary relationship existed. The trial court expressly ordered that it would only hear limitations as a basis for summary judgment, but the court may have supported its summary judgment by an implicit finding of no fiduciary duty. We need not rely solely on the normal summary judgment presumptions in Witmer's favor. Her summary judgment proof raises a fact issue about the existence of a fiduciary duty owed to Witmer by the appellees. An officer or director of a closely held corporation, as well as the corporation itself, may become fiduciaries to a shareholder when the corporation, officer, or director repurchases the shareholder's stock. *Miller v. Miller*, 700 S.W.2d 941, 945–46 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); 12B William M. Fletcher, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5811.05 (perm.ed., rev.vol. 2000). Fiduciary duties may arise from formal and informal relationships and may be created by contract. *Crim Truck & Tractor Co. v. Navistar International Transportation Corporation*, 823 S.W.2d 591, 593–94 (Tex.1992); *Lacy v. Ticor Title Insurance Company*, 794 S.W.2d 781, 788 (Tex.App.—Dallas 1990), *writ den'd*, 803 S.W.2d 265 (Tex.1991). In the present case, the summary judgment proof shows that the appellees incorporated Sabine within days of signing the Stock Purchase Agreement. That agreement represented that all projects had been disclosed. The summary judgment proof also shows that Witmer and Cantrell were cousins and that Cantrell, Fawcett, and William Witmer had been in business together for many years.

If a jury finds that a fiduciary relationship existed, then any injury from a breach

of the fiduciary duty would be presumed to be inherently undiscoverable; the discovery rule could apply to toll the running of limitations. At trial, Witmer would also have to secure favorable jury findings on the discovery rule issue of whether she knew or should have known, with the exercise of reasonable diligence, of her injury. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex.1988).

*Summary Judgment Under Rule 166a(c)*

■ Although Witmer will bear the burden of proving and securing favorable jury findings on the discovery issue at trial, the appellees, by filing their Rule 166a(c) motion for summary judgment, assumed the burden of conclusively establishing that Witmer knew or should have known, with the exercise of reasonable diligence, of the alleged fraud and breach of fiduciary duty. *Burns v. Thomas*, 786 S.W.2d 266 (Tex.1990).

The appellees argue that Witmer did not plead fraudulent concealment. She pleaded her causes of action and the discovery rule. Her pleadings are sufficient to support the tolling of limitations. Although the Stock Purchase Agreement was apparently negotiated at arm's length and although it gave Witmer the right to inspect Encon's books and records, the parties previously enjoyed long and close business and personal relationships. Examining the books and records might have involved a substantial cost to Witmer; she had already incurred additional costs because the appellees claimed that they could not honor their original buy-out obligation. Also, Witmer had no right to examine the books and records of Sabine.

The summary judgment proof is conflicting as to whether Witmer was diligent in discovering her injury. The appellees contend that the information she received in 1985 after she read the brochure was the same she received from her son's friend in 1996. Witmer, however, claims that the diminishing returns from the Funk contracts combined with the 1996 information is what gave her the duty to inquire further about the pipeline. Witmer's evidence of her diligence included the employment of an attorney and an investigator to find out whether GSU and Encon had entered into gas supply contracts other than the Funk contracts. The fact that more than 13 years passed between the execution of the Stock Purchase Agreement and Witmer's filing suit is simply a factor that a jury could consider along with the timing and extent of Witmer's investigatory efforts during those years.

■ Ordinarily, what constitutes reasonable diligence to discover fraud is a question of fact for the jury. *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 740 (1943). That is the case here. Witmer's causes of action for fraud and breach of fiduciary duty did not accrue until she knew or should have known with the exercise of reasonable diligence about her alleged injury. Taking as true the summary judgment proof that is favorable to Witmer and indulging every reasonable inference and resolving any doubts in her favor, we find that a genuine issue of material fact exists as to whether Witmer exercised due diligence in discovering her injury.

The trial court erred if it based its summary judgment upon the grounds that the appellees urged in their motion for summary judgment under Rule 166a(c).

*Summary Judgment Under Rule 166a(i)*

■ The appellees also filed a no-evidence motion for summary judgment under Rule 166a(i), asserting that Witmer failed to produce any evidence to support the applicability of the discovery rule. Unlike their motion for summary judg-

ment under Rule 166a(c), this motion placed the burden on Witmer because she will have the burden of proving the applicability of the discovery rule at trial. Our review only includes evidence presented by Witmer in response to the appellees' motion. Rule 166a(i); *Hight v. Dublin Veterinary Clinic, supra* at 618–19. If Witmer presented more than a scintilla of evidence to support the application of the discovery rule, summary judgment for the appellees was improper.

Witmer introduced testimony that, after payments under the Funk contracts began to diminish, she and her attorney employed an investigator to try to determine whether Encon had other gas sales contracts with GSU. The investigation was unsuccessful. Witmer testified that, after receiving additional information in 1996, she initiated a deeper investigation through her attorney. She further testified that, when she confronted Cantrell at lunch in 1997, she learned that the pipeline was her husband's idea and that she should have been included in the project's profits. Whether a party exercised diligence is nearly always a fact question; the summary judgment proof here contains more than a scintilla of evidence that Witmer exercised diligence in discovering the alleged fraud and breach of fiduciary duty. Witmer introduced evidence raising fact questions concerning whether a fiduciary duty existed, whether she exercised reasonable diligence, and whether despite diligence she did not know and could not have known of her injury.

The trial court erred if it based its summary judgment on the appellees' motion for summary judgment under Rule 166a(i).

*This Court's Ruling*

The judgment of the trial court is reversed, and the cause is remanded.[3]

---

3. Because Mary Elaine Fawcett and the Estate have settled with her, Witmer requests that we transfer the case back to the district court rather than to the probate court. That question, however, should be raised in the trial court.