Opinion issued June 18, 2009









                    




     




In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00694-CV




GEORGE DIEHL DOLAN, Appellant

V.

ZELIE M. DOLAN, Appellee




On Appeal from 281st District Court
Harris County, Texas
Trial Court Cause No. 2001-52646




MEMORANDUM OPINION

          Appellee, Zelie M. Dolan, is the beneficiary of a testamentary trust, of which 
appellant, George Dolan, was appointed trustee. Zelie sued George for breach of
fiduciary duty, breach of contract, and negligence, alleging that George had
improperly written checks from her trust fund to himself and to his business, Never
Furl; to his wife for the establishment and operation of her business, Needlepoint
Paradise; and to his son. Zelie sought actual and exemplary damages. 
          A jury found that, with regard to the funds advanced to Needlepoint and his
son, George had breached his fiduciary duties as trustee and had acted with gross
negligence. The jury also found that Zelie had consented to the use of her trust funds
for the establishment and operation of Needlepoint and for the payment of
commissions to George as compensation. The jury awarded to Zelie $154,000.00 in
actual damages and $8,370.00 in exemplary damages. The jury found that George
was entitled to $36,475.00 in trustee’s fees. 
          On appeal, George presents four issues. In his first and fourth issues, George
challenges the legal sufficiency of the evidence to support the jury’s finding that he
acted with gross negligence in using trust funds for Needlepoint and in giving trust
funds to his son. In his second issue, George contends that the trial court erred by
failing to give effect to the jury’s determination that Zelie consented to the use of her
trust funds for Needlepoint, which established his affirmative defense of consent. In
his third issue, George contends that the trial court erred by failing to give effect to
the jury’s determination that Zelie knew or should have known of the use of her trust
funds for Needlepoint before October 15, 1997, which established his limitations
defense and barred Zelie’s claim of breach of fiduciary duty.
          We affirm.
Summary of Facts and Procedural History
          George and Zelie are brother and sister. When their mother died in 1976, Zelie
was a member of the Congregation of Divine Providence, a religious order that
adheres to a vow of poverty. Zelie’s interest in her mother’s estate had been
preserved through a testamentary trust, of which George was appointed trustee. The
terms of the testamentary trust provide, in relevant part, that “[t]he trustee shall in no
case be liable for loss to the trust estate, except for his willful breach of trust, bad
faith, or gross negligence, nor for any other error of judgment in the exercise of good
faith . . . .” The value of Zelie’s interest was approximately $500,000.00. 
          For many years, Zelie was a student, earning graduate degrees in mathematics
and religion, and she worked in churches and hospitals, ministering and teaching
religious classes. In addition, Zelie lived abroad for several years. During that time,
George managed the trust investments, paid Zelie’s expenses from the trust fund, and
periodically sent spreadsheet statements to Zelie showing the earnings and
disbursements from the fund. When Zelie visited, George insisted that she review her
trust finances. It is undisputed that, during this time, Zelie took very little interest in
the trust.
          In June 1994, Zelie visited George and his wife, Barbara. At that time, George
and Barbara were considering starting a needlepoint business. George and Barbara
traveled to needlepoint shops, studied the market, and talked with suppliers. Barbara
estimated that it would take $150,000 to establish her business over a period of time.
According to George, Zelie participated in the discussions he and Barbara had with
regard to starting the business and, when George discussed finding a lender, Zelie
said that there was no need because there was money in the trust. According to Zelie,
she was aware that Barbara was planning to open a shop, but she was unaware that
the trust would be the prime source of financing.
          In July 1994, Zelie moved to Seattle, Washington.
          It is undisputed that, beginning in 1995, George regularly wrote checks to
Barbara to establish her shop, Needlepoint Paradise. By year 2000, the advances
from the trust totaled $158,370.00. It is undisputed there had not been any formal
documentation concerning the nature of the advances, e.g., whether such advances
were considered to be loan or an investment and whether the trust held any security
or ownership interest. It is undisputed that Barbara invested $65,000 of her own
money into Needlepoint and that George did not personally invest in the venture.
          In addition, during the period of 1996 to 2000, George wrote checks to himself
from the trust fund. The parties dispute whether Zelie had agreed that George could
deduct a five percent annual commission as compensation for managing the trust.
George also advanced funds from the trust to his business, Never Furl. In January
2000, George executed a promissory note pertaining to $14,500.00 of the funds he
had advanced to Never Furl. The note, which was due on demand, provided that
George would pay 9.5 percent interest until paid. George paid this loan off through
offsets to his commissions. Further, Zelie testified that George gave $4,000.00 to his
son, Eddie Dolan.
          George testified that the statements he periodically sent to Zelie reflected the
sums he had written to Barbara, to himself, and to his son.
          In early 2000, Zelie decided to retire and took a class on investments. In July
2000, she asked George to come to Seattle and to bring the trust records. Zelie
testified that, during that visit, she was “horrified” to discover that the trust had
supplied $158,370.00 in funding to Needlepoint. Zelie said that, after her discovery,
she understood that the sum advanced was a loan that George would pay back.
          Thereafter, George ceased writing checks from the trust to support Needlepoint
and, in early 2001, Needlepoint was closed. On the books of the trust, George wrote
off the $158,370.00 loss as a bad investment. In September 2001, George wrote a
letter to Zelie, informing her that Needlepoint had been closed, apologizing that he
“had expected to be able to pay this back with interest” but that it would be unlikely,
and asking that he be forgiven. 
          On October 15, 2001, Zelie sued George for breach of fiduciary duty, breach
of contract, and negligence, seeking actual and exemplary damages.


 George
answered with a general denial and asserted the affirmative defenses of consent and
limitations, alleging that Zelie had consented to the use of her trust funds for
Needlepoint and that her claims were barred by the statute of limitations. The matter
was tried to a jury. At trial, the parties disputed whether Zelie had consented to the
use of trust funds to finance Needlepoint and whether the sums advanced constituted
a loan or an investment.
          The jury found that George had breached his fiduciary duties with regard to the
funds written to Needlepoint and Eddie. In addition, the jury found that George’s use
of the trust funds for Needlepoint and the payment to Eddie were committed with
gross negligence. The jury also found that Zelie consented to the use of trust funds
for the establishment and operation of Needlepoint, that Zelie consented to the
payment of commissions to George, and that Zelie first knew, or in the exercise of
reasonable diligence should have known, of the use of trust funds for the operation
of Needlepoint prior to October 15,1997. The jury awarded to Zelie $154,000.00 in
actual damages, plus $8,370.00 in exemplary damages, less $36,475.00 in trustee’s
fees owed to George, with final damages totaling $125,895.00 plus interest. 
          George filed a “Motion to Modify or Reform the Judgment, or Alternatively
For New Trial,” contending that the evidence was insufficient to support the jury’s
finding that George acted with gross negligence and that the judgment failed to give
effect to the jury’s findings in favor of George on his affirmative defenses of consent
and limitations. His motion was overruled by operation of law. This appeal ensued.
Gross NegligenceIn his first and fourth issues on appeal, George contends that there is no
evidence to support the jury’s finding of gross negligence and therefore the trust’s
exculpatory clause precluded his liability for breach of fiduciary duty.
 
 
 
 
 A.      Standard of Review


 
          In conducting a legal sufficiency review, we “consider evidence in the light
most favorable to the verdict, and indulge every reasonable inference that would
support it.” City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005). We will
sustain a legal sufficiency or “no-evidence” challenge if the record shows one of the
following: (1) a complete absence of evidence of a vital fact, (2) rules of law or
evidence bar the court from giving weight to the only evidence offered to prove a
vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or
(4) the evidence establishes conclusively the opposite of the vital fact. Id. at 810. If
there is more than a scintilla of evidence to support the challenged finding, we must
uphold it. Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960
S.W.2d 41, 48 (Tex. 1998). “‘[W]hen the evidence offered to prove a vital fact is so
weak as to do no more than create a mere surmise or suspicion of its existence, the
evidence is no more than a scintilla and, in legal effect, is no evidence.’” Ford Motor
Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983)). However, if the evidence at trial would enable
reasonable and fair-minded people to differ in their conclusions, then jurors must be
allowed to do so. City of Keller, 168 S.W.3d at 822; see also King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003). “A reviewing court cannot substitute
its judgment for that of the trier-of-fact, so long as the evidence falls within this zone
of reasonable disagreement.” City of Keller, 168 S.W.3d at 822. “The final test for
legal sufficiency must always be whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.” Id. at 827. 
B.      Applicable Law and Guiding Principles
          The Texas Trust Code generally prohibits a trustee from lending trust funds to
himself or to a relative of the trustee. Tex. Prop. Code Ann. § 113.052 (Vernon
2007). Section 114.007 provides, however, that a settlor may, by the terms of the
trust, “expressly reliev[e] the trustee from a duty or restriction imposed by this
subtitle or by common law . . . .” Id. § 114.007 (Vernon 2007). 
          Here, the terms of the trust provide, in relevant part, that “[t]he trustee shall in
no case be liable for loss to the trust estate, except for his willful breach of trust, bad
faith, or gross negligence, nor for any other error of judgment in the exercise of good
faith . . . .” (Emphasis added.) Such an exculpatory clause has been held effective in
exonerating a trustee from liability for losses when no evidence of gross negligence
was shown. See Texas Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 251 (Tex.
2002). 
          The jury found in Question Number 1 of the charge that George breached his
fiduciary duties with regard to the trust funds that he advanced to Needlepoint and to
Eddie. Question No. 2 of the charge asked, “For each breach of fiduciary duty, if any,
which you have found was committed by [George], do you further find that
[George’s] conduct was a willful breach of trust, was committed in bad faith, or was
committed with gross negligence.” (Emphasis added.) The jury answered that
George acted with gross negligence with regard to funds advanced to Needlepoint
and to Eddie.
          To prove gross negligence, a plaintiff must show (1) an act or omission that,
when viewed objectively from the defendant’s standpoint at the time it occurred,
involved an extreme degree of risk, considering the probability and magnitude of the
potential harm to others and (2) that the defendant had an actual, subjective awareness
of the risk but proceeded with a conscious indifference to the rights, safety, and
welfare of others. Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (Vernon 
2008); Columbia Med. Ctr. of Las Colinas v. Hogue, 271 S.W.3d 238, 248 (Tex.
2008). 
           Under the first element, an “extreme risk is not a remote possibility of injury
or even a high probability of minor harm, but rather the likelihood of serious injury
to the plaintiff.” Hogue, 271 S.W.3d at 248 (quoting Transp. Ins. Co. v. Moriel, 879
S.W.2d 10, 22 (Tex. 1994)). To determine if acts or omissions involve extreme risk,
we analyze the events and circumstances from the defendant’s perspective at the time
the harm occurred, without resorting to hindsight. Id. Under the second element,
“actual, subjective awareness” means that “the defendant knew about the peril, but
its acts or omissions demonstrated that it did not care.” Mobil Oil Corp. v. Ellender,
968 S.W.2d 917, 921 (Tex. 1998). Circumstantial evidence is sufficient to prove
either element. Id.
C.      Needlepoint Paradise
          In his first issue, George contends that there is no evidence of either the
objective or the subjective components of gross negligence with regard to his actions
concerning funds he advanced to Needlepoint. George contends that, although
Needlepoint was an unproven start-up business, there was no evidence of an act or
omission that, when viewed objectively from his standpoint at the time it occurred,
involved an extreme degree of risk, considering the probability and magnitude of the
potential harm to others. See Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11)(A). 
George contends that the evidence shows that he and Barbara both testified that they
conducted extensive due diligence prior to opening Needlepoint and that they both
believed that it would become a thriving business. 
          The evidence also shows, however, that, at the time George began to move
funds from the trust to Needlepoint, he intended to use a total of $150,000.00 over the
course of three to five years in a brand new business venture. The record shows that
this sum represented as much as 40 percent of the value of the trust (as reflected in
George’s spreadsheets admitted at trial). George did not establish with Zelie any oral
or written terms concerning his use of the funds. In addition, the record shows that
George did not pledge any collateral, offer any security, or document any ownership
interest that Zelie or the trust would have in Needlepoint. Hence, the evidence shows
that George placed nearly half of the assets of the trust—which constituted Zelie’s
retirement fund—at a risk of total loss, while offering nothing as security or
compensation to the trust or to Zelie. This court has recognized that a risk of
financial ruin constitutes an extraordinary or extreme risk of harm. Cf. Bluebonnet
Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc., 907 S.W.2d 904, 911 (Tex.
App.—Houston [1st Dist.] 1995, writ denied) (citing Moriel, 879 S.W.2d at 24).
          We conclude that the record reflects evidence of acts that, when viewed
objectively from George’s standpoint, at the time they occurred, involved an extreme
degree of risk, considering the probability and magnitude of the potential harm to the
trust. Hence, there is evidence to support the objective component of the gross
negligence analysis. See Hogue, 271 S.W.3d at 248.
          Next, George contends that there is no evidence that he had an actual,
subjective awareness of the risk but nevertheless proceeded with conscious
indifference to the rights, safety, and welfare of others. See Tex. Civ. Prac. & Rem.
Code Ann. § 41.001(11)(B). George contends that there was no evidence that he
knew that there was a high risk that the trust funds would be lost in Needlepoint, and
that the evidence shows that he believed that the business would be viable. George
contends that his “belief at the time that the business would be likely to succeed, and
that the use of trust funds in the business was reasonable and proper, conclusively
negates the subjective component.”
          The record also shows, however, that George is an experienced businessman
who appreciated the risks of a new business venture. He has owned companies with
assets approximating five million dollars, one or more of which ultimately failed. 
The record shows that George had an actual, subjective awareness of the risk
involved with starting Needlepoint, as he did not invest any of his own money into
Needlepoint and Barbara invested only $65,000.00. George was asked at trial
whether the evidence that he and Barbara were only willing to invest $65,000 into
Needlepoint demonstrated that it “wasn’t even close to a good investment.” George
responded in the affirmative. 
          The record further shows that George nevertheless proceeded with conscious
indifference to the rights, safety, and welfare of the trust. Barbara testified that
Needlepoint did not at any time yield the $4,000 to $6,000 monthly profits she had
projected and that it was fairly apparent that Needlepoint would not become a going
concern. Barbara testified that when she needed money to continue to fund
Needlepoint, she went to the trust rather than use money in her own account. George
testified that he wrote checks to Needlepoint from the trust fund whenever Barbara
asked. The record also shows that, in the beginning, George wrote “loan” on several
of the checks he wrote, but, as time went by, he ceased making any such designations
on the checks. He later wrote off the entire $158,370.00 on the books of the trust as
a bad investment. George then wrote to Zelie and told her that he “had expected to
be able to pay this back with interest,” but that it had become unlikely. 
          Hence, there is evidence from which the jury could have concluded that George
had actual, subjective awareness that Needlepoint was failing, yet he continued to
advance funds to Barbara, without limitation, and that he simply shifted the character
of the advances from a loan to an investment, which shifted the risk of the failing
venture from George to Zelie. We conclude that the evidence shows that George had
an actual, subjective awareness of the risk but proceeded with a conscious
indifference to the rights, safety, and welfare of others. See id. Hence, there is
evidence to support the subjective component of the gross negligence analysis. See
Hogue, 271 S.W.3d at 248.
          Viewing the evidence in the light most favorable to the judgment and indulging
every reasonable inference that supports the judgment, we conclude that this evidence
would enable reasonable and fair-minded people to reach the conclusion that George
acted with gross negligence with regard to the trust funds that he advanced to
Needlepoint. See City of Keller, 168 S.W.3d at 822. Therefore, we hold that the
evidence is legally sufficient. 
          Accordingly, we overrule George’s first issue.
D.      Eddie Dolan
          In his fourth issue, George contends that there is that there is no evidence of
either the objective or the subjective components of gross negligence with regard to
funds that he gave to his son, Eddie. George does not in his brief on appeal present
any specific argument for this contention, provide record references, or cite authority. 
Hence, nothing is presented for our review. See Tex. R. App. P. 38.1(i).
          Accordingly, we overrule George’s fourth issue.
 
 
Consent
          In his second issue, George contends that the trial court failed to give effect to
the jury’s finding that Zelie consented to the use of her trust funds for Needlepoint.
          The questions at issue and the jury’s answers are the following, in relevant part:
          Question Number 1
Did George Diehl Dolan fail to comply with his fiduciary duty to Zelie
M. Dolan? Unless the terms of the trust instrument provide otherwise,
a Trustee fails to comply with his fiduciary duty if: 
          a.       He violates his duty to refrain from any self dealings which
extends to dealing with the fiduciary’s spouse, agent, employees
and other persons whose interest[s] are closely identified with
those of the fiduciary.
          b.       He violates his duty to refrain from lending trust funds to himself,
to an affiliate of the trust, . . . .
          c.       He violates his duty of good faith, fair dealing, loyalty, and
fidelity over the trust’s affairs and its principal.
          d.       He violates his duty to make assets of the trust productive while
at the same time preserving the assets.
          e.       He violates his duty to disclose all material facts known to the
trustee that might affect the beneficiary’s rights.
          f.       He violates his duty to account to the beneficiary for all trust
transactions.
          g.       He violates his duty to properly manage, supervise, and safeguard
trust funds.
Answer “yes” or “no” as to each of the following transactions or
occurrences:
          1.       Use of Trust funds for Needlepoint Paradise: Yes . . . .
          . . . .
If you have answered any part of [Q]uestion Number 1 “yes[,]” then
answer the following question. . . . 
          Question No. [sic] 2
For each breach of fiduciary duty, if any, which you have found was
committed by George Dolan, do you further find that George Dolan’s
conduct was a willful breach of trust, was committed in bad faith, or was
committed with gross negligence? Answer “Yes” or “No” as to each.
          1.       Use of Trust funds for Needlepoint Paradise
                    Willful breach:    No
                    Bad Faith:              No
                    Gross Negligence: Yes
          . . . .
If you have answered “Yes” as to any part of Question Number 2, then
answer Question Number 8. . . . 
          Question No. 8
Did Zelie M. Dolan know of and consent to the use of trust funds for the
establishment and operation of the business known as Needlepoint
Paradise? Answer “Yes” or “No[.]”
          Answer: Yes
          George contends that the jury’s answer in Question Number 8 established that
Zelie consented to the use of her trust funds for Needlepoint and that, “[a]lthough [he]
moved for judgment on the grounds that this answer established the affirmative
defense of consent, the trial court failed to give effect to this answer and instead
rendered judgment for Zelie.” George relies on Slay v. Burnett Trust, 187 S.W.2d
377, 391 (Tex. 1945), for the proposition that
[a] beneficiary who consents to an act or omission by the trustee which
would constitute a breach of trust cannot hold him liable for the
consequences of the act or omission, if the beneficiary was sui juris and
had full knowledge of all relevant facts and of his legal rights and if his
consent was not induced by any improper conduct of the trustees.
 
Id. In essence, George complains that he cannot be liable in Question Number 1
because consent was found in Question Number 8.
          Zelie contends that the issue is waived because the record does not reflect that 
George objected to the jury’s answer to Question Number 8 or to the manner in which
the trial court dealt with it before the jury was discharged. Rather, George first raised
the issue of how the trial court handled the jury’s answer in his motion for new trial. 
          Rule of Civil Procedure 295 provides as follows:
If the purported verdict is defective, the court may direct it to be
reformed. If it is incomplete, or not responsive to the questions
contained in the court’s charge, or the answers to the questions are in
conflict, the court shall in writing instruct the jury in open court of the
nature of the incompleteness, unresponsiveness, or conflict, provide the
jury such additional instructions as may be proper, and retire the jury for
further deliberations.
 
Tex. R. Civ. P. 295 (emphasis added). 
          It is well-settled that, to preserve error, an objection to conflicting jury findings
must be made before the jury is discharged. Oyster Creek Fin. Corp. v. Richwood 
Inv. II, Inc., 176 S.W.3d 307, 324 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)
(citing string of authority); see Fleet v. Fleet, 711 S.W.2d 1, 3 (Tex. 1986).
          Here, as Zelie notes, the trial transcript before us concludes when the jury was
sent to deliberate. The record does not reflect, and George does not contend, that he
raised his objection to any conflict in the jury answers prior to the discharge of the
jury. Although George raised the issue in his motion for new trial, later raising the
issue in a motion for new trial is insufficient to preserve the complaint. See e.g., City
of San Antonio v. Esparza, No. 04-04-00631-CV, 2005 WL 3477826, at *2 (Tex.
App.—San Antonio, Dec. 21, 2005, no pet.) (mem. op.) (declining to hold that issue
concerning conflict in jury answers may be raised for first time in motion for new
trial). We conclude that George has waived his complaint. See Tex. R. App. P. 33.1;
Tex. R. Civ. P. 295; Oyster Creek Fin. Corp., 176 S.W.3d at 324.
          Even if we conclude that the issue has been preserved, it cannot be sustained.           When determining whether jury findings can be reconciled, we apply a de novo
standard of review. See Bender v. S. Pac. Transp. Co., 600 S.W.2d 257, 260 (Tex.
1980); Adams v. Allstate County Mut. Ins. Co., 199 S.W.3d 509, 512 (Tex.
App.—Houston [1st Dist.] 2006, pet. denied). The threshold question is whether the
findings address the same material fact. Bender, 600 S.W.2d at 260. We must then
presume that jurors did not intentionally make conflicting findings. Trans-Amer. Van
Serv., Inc. v. Shirzad, 596 S.W.2d 587, 593 (Tex. Civ. App.—Houston [1st Dist.]
1980, no writ). We must reconcile apparent conflicts in the jury’s findings if
reasonably possible in light of the pleadings and evidence, the manner of submission,
and the other findings considered as a whole. Bender, 600 S.W.2d at 260. We do not
determine whether the findings may reasonably be viewed as conflicting; to the
contrary, the question is whether there is any reasonable basis upon which the
findings may be reconciled. Id. We must uphold the verdict if there is any reasonable
basis upon which the jury answers can be reconciled. Id.; Adams, 199 S.W.3d at 512.
          Here, Question Numbers 1 and 8 expressly inquire about the same material
fact, that is, the propriety of George’s use of trust funds for Needlepoint. And, the
instructions tend to tie them together. The jury’s findings, however, may be
reasonably reconciled. As Zelie points out, the term “consent” was not defined in the
charge. Hence, based on the evidence discussed above, the jury could have
reasonably determined that Zelie consented to a loan of some money from her trust
fund to establish Needlepoint, but that George nevertheless breached his fiduciary
duty, as defined in Question Number 1, by “violat[ing] his duty to disclose all
material facts known to the trustee that might affect the beneficiary’s rights” or
violating his duty to “preserv[e] the assets” of the trust. We must uphold the verdict
when, as here, there is any reasonable basis upon which the jury answers can be
reconciled. See Bender, 600 S.W.2d at 260; Adams, 199 S.W.3d at 512.
          Accordingly, we overrule George’s second issue.
Limitations
          In his third issue, George contends that the trial court failed to give effect to the
jury’s answer in Question Number 10, which established his affirmative defense of
limitations, with regard to Needlepoint.
          The question at issue and the jury’s answer is as follows, in relevant part:
          Question No. 10
Did Zelie M. Dolan first know, or in the exercise of reasonable diligence
should have known, of the use of any trust funds . . . for the operation of
the business known as Needlepoint Paradise, before October 15,1997?
          Answer “Yes” or “No” as to each.
          . . . .
          Needlepoint Paradise: Yes
          George directs us to Texas Civil Practice and Remedies Code section 16.004,
which provides a four-year statute of limitations to a breach of fiduciary duty claim. 
See Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) (Vernon 2002). George
contends that Zelie’s cause of action accrued at the time Zelie knew or, in the exercise
of reasonable diligence, should have known, of her injury, citing In re Estate of
Fawcett, 55 S.W.3d 214, 219 (Tex. App.—Eastland 2000, pet. denied). George
contends that, because the jury established that Zelie knew or, in the exercise of
reasonable diligence, should have “first” known of the “use of any trust funds” for the
operation of Needlepoint prior to October 15, 1997, and because she did not file her
lawsuit until October 15, 2001, Zelie’s breach of fiduciary duty claim is time-barred,
which established his limitations defense.
          Again, nothing in the record before us shows that George raised his complaint
in the trial court prior to the discharge of the jury, as is required. See Oyster Creek
Fin. Corp., 176 S.W.3d at 324. Raising the issue in a motion for new trial, as here,
is insufficient to preserve the complaint. See Esparza, 2005 WL 3477826, at *2. We
conclude that George has waived his complaint. See Tex. R. App. P. 33.1; Tex. R.
Civ. P. 295; Oyster Creek Fin. Corp., 176 S.W.3d at 324.
          Again, even if we conclude that the issue has been preserved, it cannot be
sustained. The jury’s findings that George breached his fiduciary duty and owed
damages, but that Zelie “first” knew about “the use of any trust funds” (emphasis
added) prior to October 17, 1997 may be reasonably reconciled. George and Barbara
both testified that they discussed the Needlepoint venture with Zelie in 1994. It is
undisputed that George sent periodic statements to Zelie prior to 1997 that showed
disbursements to Needlepoint, but that Zelie did not examine the documents. Zelie
testified that, in July 2000, when she asked George to come to Seattle and to bring the
trust records, she was “horrified” to learn that the trust had supplied $158,370.00 in
funding to Needlepoint. Zelie testified that she then thought it was a loan. The
record shows that George wrote “loan” on some of the early checks that he wrote
from the trust to Needlepoint and that, in September 2001, George wrote a letter to
Zelie stating that he had indeed intended to pay back the $158,370.00 with interest,
but that he no longer could. 
          The jury’s answers may be reasonably reconciled as having found that,
although Zelie “first” knew, or in the exercise of reasonable diligence should have
known, of the use of “any” trust funds prior to October 17, 1997 for Needlepoint, the
actual injury did not occur until George wrote off the entire $158,370.00 as a loss in
November 2001 and told Zelie that he would not be paying it back to her as he had
earlier intended. We must uphold the judgment when, as here, there is any reasonable
basis upon which the jury answers can be reconciled. See Bender, 600 S.W.2d at 260;
Adams, 199 S.W.3d at 512.
          Accordingly, we overrule George’s third issue.
Conclusion
          We affirm the judgment of the trial court.


                                                             Laura Carter Higley
                                                             Justice
 
Panel consists of Justices Jennings, Alcala, and Higley.