Marcus W. HIGHT and Punk Carter d/b/a/ Hight/Carter Goat Partnership, Appellants,

v.

DUBLIN VETERINARY CLINIC, a Professional Corporation; J. Dennis Reed, D.V.M.; John Edwards and Jackie Edwards d/b/a/ Erath General Genetic Services, Appellees.

No. 11–99–00151–CV.

Court of Appeals of Texas, Eastland.

June 8, 2000.

Rehearing Overruled July 27, 2000.

was anesthetized at the Dublin Veterinary Clinic and dehorned; that approximately 15 to 20 minutes after the dehorning procedure was completed, Pancho died; that Vet appellees sent tissue samples from Pancho to the Texas Veterinary Medical Diagnostic Laboratory and the tests showed that Pancho died of acute pulmonary congestion and edema; and that Vet appellees then burned Pancho's body without their consent.

Brad Jackson, Jackson & Matthews, Dallas, for appellant.

Christopher J. Pruitt, Donald A. Ferrill, Brown, Thompson, Pruitt & Peterson, Fort Worth, Gale Warren, Law Office of Gale Warren, Stephenville, for appellee.

ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

JIM R. WRIGHT, Justice.

The trial court granted appellees'[1] no-evidence motions for summary judgment. Because we find that the trial court properly granted the motions, we affirm.

### Background Facts

This case arises from the death of a Boer goat named Pancho. In their second amended original petition, appellants alleged that they were in the business of owning, breeding, and selling goats; that they placed Pancho with the Edwards "at their breeding facility for the purpose of standing him at stud, collecting, storing and selling his semen"; that an employee of the Edwards spoke with and explained to Carter's wife that "Pancho's horns [were] growing into his head, and we need to do something about it"; that Carter consented to what he considered a "tip[ping]" of Pancho's horns; that Pancho

### Procedural Facts

Appellants sued the Clinic for negligence, breach of contract, and breach of warranty. Appellants also sued the Edwards for violations of the Texas Deceptive Trade Practices Act, TEX.BUS. & COM. CODE ANN. ch. 17 (Vernon 1987 & Pamph.Supp.2000) (DTPA). In response to appellees' no-evidence motions for summary judgment, appellants filed responses which included the affidavits of appellants and their expert witness, Dr. David Fazzino. The Clinic then filed a reply to appellants' responses and asserted objections to appellants' affidavits. The Edwards did not file a reply nor did they assert any objections. The trial court sustained the Clinic's objections to the affidavit of Dr. Fazzino, striking it in its entirety. The court then granted appellees' motions for summary judgment. Appellants filed a motion for new trial which was overruled by operation of law.

### Issues on Appeal

Appellants argue that the trial court erred in granting the Clinic's motion for summary judgment because (a) the trial court improperly struck Dr. David Fazzino's affidavit; (b) the Clinic's motion for summary judgment is not supported by any competent summary judgment evidence; (c) genuine issues of material fact existed on appellants' negligence claims; (d) the doctrine of res ipsa loquitur ap-

1. Appellees are Dublin Veterinary Clinic, a Professional Corporation, and J. Dennis Reed, D.V.M. (the Clinic) and John Edwards and Jackie Edwards d/b/a Erath General Genetic Services (the Edwards).

plies herein precluding summary judgment; (e) appellants were entitled to a spoliation presumption; (f) genuine issues of material fact existed on appellants' breach of contract and implied warranty claims; and (g) appellants were entitled to recover for the loss of income resulting from Pancho's death. In addition, appellants argue that the trial court erred in granting the Edwards' motion for summary judgment because (a) their motion does not comply with TEX.R.CIV.P. 166a(i); (b) the Edwards' motion for summary judgment is not supported by competent summary judgment evidence; (c) a genuine issue of material fact existed on appellants' negligence claims; (d) the doctrine of res ipsa loquitur applies herein precluding summary judgment; (e) appellants were entitled to a spoliation presumption; (f) genuine issues of material fact existed on appellants' breach of contract and implied warranty claims; (g) genuine issues of material fact existed on appellants' DTPA claims; and (h) appellants are entitled to recover for the loss of income resulting from Pancho's death.

No-evidence summary judgments are relatively new to Texas jurisprudence. In 1997, the rule pertaining to summary judgments, TEX.R.CIV.P. 166a, was amended to provide a procedure whereby a party might obtain a summary judgment based upon the proposition that there was no evidence of one or more of the essential elements of a claim or defense relied upon by the opposite party. That rule, Rule 166a(i), provides as follows:

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces

summary judgment evidence raising a genuine issue of material fact.

Frequently, the cases reviewing no-evidence summary judgments do so as though they were pretrial directed verdicts. Accordingly, the standard of review applied was one in which the court considered the evidence in the light most favorable to the non-movant and disregarded all contrary evidence. See, e.g., *Bosque Asset Corp. v. Greenberg*, 19 S.W.3d 514 Tex.App.—Eastland, 2000); *Grant v. Southwestern Electric Power Company*, 20 S.W.3d 764 (Tex. App.—Texarkana, 2000); *Denton v. Big Spring Hospital Corporation*, 998 S.W.2d 294 (Tex.App.—Eastland 1999 no pet'n); *Moore v. K Mart Corporation*, 981 S.W.2d 266 (Tex.App.—San Antonio 1998, review denied); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68 (Tex.App.—Austin 1998, no pet'n); Judge David Hittner and Lynn Liberato, *Summary Judgments in Texas*, 34 Hous.L.Rev. 1303 (1998).

■ We now believe that the better approach is to review no-evidence motions for summary judgments in the same manner any other Rule 166a summary judgment is reviewed. We see no reason to engage in analogies when we already have in place a standard by which to review motions for summary judgments. In reviewing any Rule 166a summary judgment, we hold that, including a no-evidence summary judgment under that rule, we must accept as true evidence in favor of the non-movant and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *El Chico Corporation v. Poole*, 732 S.W.2d 306 (Tex.1987). An exercise of this standard would not involve any consideration of any summary judgment evidence offered by the proponent of the motion. Rule 166a(a) and (b) provide that the movant may proceed *with or without* supporting affidavits. (Emphasis added) To the contrary, Rule 166a(i) provides that "a party *without* presenting summary judgment evidence may move for summary judgment." (Emphasis added) Therefore, summary judgment evidence proffered by

the movant is not to be considered in determining a no-evidence summary judgment. We point out that the Waco Court of Appeals held in *Grimes v. Andrews*, 997 S.W.2d 877 (Tex.App.—Waco 1999, no pet'n), that, in cases where a moving party attaches summary judgment evidence, the review would be conducted as though the motion for summary judgment was a traditional one.

■ In summary, we hold that, in reviewing a no-evidence summary judgment, we will not consider summary judgment evidence propounded by the movant and that we will accept as true evidence in favor of the non-movant, indulging every reasonable inference and resolving all doubts in favor of the non-movant.

■ The question then becomes whether the summary judgment evidence presented by the non-movant, when so considered, is some evidence which raises a material issue of fact. The trial court properly granted the no-evidence summary judgment if appellants failed to bring forth more than a mere scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of appellants' claims. Less than a mere scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, so that the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a mere scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997).

We now examine appellants' issues in accordance with these standards.

### Spoliation

■ Appellants argue that the trial court erred in granting appellees' motions for summary judgment because they were entitled to a spoliation presumption based on the alleged intentional destruction of Pancho's body without their consent. The intentional destruction, or spoliation, of evidence relevant to a case may, in the trial court's discretion, give rise to a presumption that the destroyed evidence would not have been favorable to its destroyer. *Ordonez v. M.W. McCurdy & Co.*, Inc., 984 S.W.2d 264, 273 (Tex.App.—Houston [1st Dist.] 1998, no pet'n). The presumption may be rebutted by a showing that the evidence in question was not destroyed with a fraudulent purpose or intent. *Ordonez v. M.W. McCurdy & Co., Inc., supra.*

■ While appellants argue that they are entitled to a spoliation presumption, we have reviewed the record and have found no evidence of what happened to Pancho's body or that it was intentionally destroyed by appellees. We have only appellants' allegations, and we are bound by the record before us. *E.L. Smith v. Sun–Belt Aviation, Ltd.*, 625 S.W.2d 22, 24 (Tex.App.—San Antonio 1981, writ dism'd). This contention is overruled.

### Appellants' Expert Affidavit

■ We now turn to the issue of whether, without the spoliation presumption, appellants brought forth sufficient summary judgment evidence to survive the no-evidence summary judgment motion on their negligence claims. We find that the trial court properly struck appellants' expert affidavit and, in the absence of that affidavit, that appellants did not bring forth sufficient summary judgment proof to defeat the no-evidence motions for summary judgment.

TEX.R.EVID. 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Although a trial court makes many inquiries as gatekeeper, in this particular case, this court has three questions to resolve in determining whether it was proper for the trial court to strike appellants' expert affidavit: (1) was the witness qualified as an expert in the field; (2) was the testimony relevant to the issues in the case, and (3) was the testimony based upon a reliable foundation? See *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713 (Tex.1998).

In his affidavit, Dr. Fazzino stated that he had been a licensed practicing veterinarian in the State of Texas since 1984. He also stated that he provided veterinary care to animals, including goats. During his practice, he has anesthetized animals on several thousand occasions. In reaching the opinions stated in his affidavit, Dr. Fazzino reviewed a report from the Texas Medical Diagnostic Laboratory which was issued in connection with tests on specimens from Pancho. This report included a clinical history provided by Dr. Reed, one of the appellees. Dr. Fazzino also stated that he reviewed "Plaintiff's Second Amended Original Petition, discovery responses and documents produced by the Defendants, including Dr. Reed's Single Animal Record." Dr. Fazzino did not examine Pancho's body because it "was reportedly disposed of at the time of his death." In his affidavit, Dr. Fazzino further related that there are "inherent risks associated with [the] use of anesthesia and potential side effects, including death," which should be explained to the owner, and the owner's consent should be obtained. He opined that the minimum accepted standard of care would be to closely monitor the animal post-surgically and that, based upon the records and documentation provided to him, Dr. Reed's treatment fell below that minimum standard of care. He continued:

> The failure to closely monitor an animal post-surgically, should an adverse reaction or side effect manifest itself in the animal, deprives the animal of the opportunity to respond to appropriate therapeutic measures and, consequently, its ability to recover. By failing to properly monitor Pancho, Dr. Reed deprived him of the opportunity to receive and respond to resuscitative treatment which was a proximate cause of Pancho's death.

Dr. Fazzino concluded his affidavit with the statement that: "The death of an otherwise healthy goat does not ordinarily occur from a dehorning procedure in the absence of negligence."

We must first determine whether or not Dr. Fazzino is qualified as an expert. TEX.R.CIV.P. 166a(f) provides that supporting and opposing affidavits in summary judgment proceedings "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." This requirement includes proof of the expert's qualifications.

The decision as to whether an expert witness is qualified to testify is a matter committed to the trial court's discretion. *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex.1997). We review the abuse of discretion by the standard of "whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Company, Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995). The offering party bears the burden of establishing that the witness is qualified as an expert. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex.1996).

In *Broders v. Heise, supra* at 152, the Texas Supreme Court stated that "there is no validity ... to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question." The trial court must ensure that "experts truly have expertise concerning the actual subject about which they are offering an opinion." Therefore, appellants had the burden of showing that Dr. Fazzino had " 'knowl-

edge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders v. Heise, supra* at 153, quoting *Ponder v. Texarkana Memorial Hospital, Inc.*, 840 S.W.2d 476, 477–78 (Tex.App.— Houston [14th Dist.] 1991, writ den'd).

The statement in Dr. Fazzino's affidavit that he had provided "veterinary care to animals including goats and *ha[d] anesthetized animals several thousand times*" qualified him as an expert in the specific area of anesthesia. (Emphasis added)

██ Under Rule 702, an expert witness must not only be qualified but the evidence offered must also be reliable and, in order to be helpful, must be relevant. *E.I. du Pont de Nemours & Company, Inc. v. Robinson, supra.* The same rule applies to expert testimony offered by affidavit in a summary judgment proceeding. *Downing v. Gully*, 915 S.W.2d 181, 184 (Tex. App—Fort Worth 1996, writ den'd). These requirements apply to all expert testimony offered under Rule 702. *Gammill v. Jack Williams Chevrolet, Inc., supra.*

██ The testimony is relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *E.I. du Pont de Nemours & Company, Inc. v. Robinson, supra* at 556. Furthermore, the principles or techniques used by the witness and upon which his testimony is based must be reliable. *E.I. du Pont de Nemours & Company, Inc. v. Robinson, supra* at 557.

██ The proponent of the expert's testimony bears the responsibility of showing that the requirements have been met; and the trial court, as gatekeeper, is responsible for making the determination whether that burden has been met. TEX. R.EVID. 104; *Gammill v. Jack Williams Chevrolet, Inc., supra*; *E.I. du Pont de Nemours & Company, Inc. v. Robinson, supra* at 556. The trial court's decision to admit or not to admit the testimony is one

committed to its discretion. *Gammill v. Jack Williams Chevrolet, Inc., supra* at 727. It is not for the trial court to decide whether the conclusions reached by the expert are correct, but, rather it is to determine whether the analysis used to reach those conclusions is correct. *Gammill v. Jack Williams Chevrolet, Inc., supra* at 728. As the court in *Robinson* noted:

> There is a difference between the reliability of the underlying theory or technique and the credibility of the witness who proposes to testify about it. An expert witness may be very believable, but his or her conclusions may be based upon unreliable methodology.

*E.I. du Pont de Nemours & Company, Inc. v. Robinson, supra* at 558.

██ The inquiry into the admissibility of expert testimony is a flexible one in which the focus is not on the opinion but rather upon the principles and methodology which underlie the opinion. *E.I. du Pont de Nemours & Company, Inc. v. Robinson, supra* at 557. Although various cases set forth certain factors which a trial court may consider in making the initial decision concerning the admissibility of such evidence, the factors actually considered will "differ with each particular case." *E.I. du Pont de Nemours & Company, Inc. v. Robinson, supra*; see, e.g., *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Gammill v. Jack Williams Chevrolet, Inc., supra* at 720.

It is against this backdrop that we examine Dr. Fazzino's affidavit. The affidavit reveals that he reviewed various documents and a lab report. The affidavit also shows that, generally, there are risks associated with anesthesia. A minimum standard of care would be to monitor the animal closely following surgery because of the potential side effects or adverse reactions. A failure to monitor an animal "*should* an adverse reaction or side effect" occur would deprive the animal of the "op-

portunity to respond to appropriate therapeutic measures." (Emphasis added) Dr. Fazzino then gave his opinion that Dr. Reed failed to monitor Pancho closely and "deprived him of the opportunity to receive and respond to resusitative treatment which was a proximate cause of Pancho's death."

■ At the outset, we note that "an expert cannot merely state that he knows the standard of care and conclude that it was [not] met because affidavits that only state conclusions, as opposed to facts, are insufficient summary judgment proof." *Downing v. Gully, supra* at 184. The affidavit does not contain an opinion as to whether any of the *potential* side effects or adverse reactions *from the anesthesia* did in fact occur here. Testimony to the "effect that a substance 'could' or 'can' cause a disease or disorder is not evidence that in reasonable probability it does." *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 729 (Tex.1997). Neither does the affidavit contain any foundational reliability for such an opinion. There is no indication of the potential success of any resuscitative treatments. The affidavit contains no foundational information that the goat's death was in any way related to the anesthesia or to the failure to monitor him. As the court stated in *Gammill,* "he has offered nothing to suggest that what he believes *could have* happened actually *did* happen." (Emphasis added) *Gammill v. Jack Williams Chevrolet, Inc., supra* at 728. As we have previously stated, it is not the court's task to determine whether the conclusions are correct, only to determine whether the analysis which the expert used is reliable. *Gammill v. Jack Williams Chevrolet, Inc., supra.* Here, although the affidavit does provide information that various records were reviewed and that certain general principles exist in connection with the use of anesthesia, there is no information as to the methodology and basis which underlie the opinion testimony and how those records and general principles relate to the opinions given.

Without such information, it is impossible to determine the issue of reliability, as that concept has been defined in *Daubert, Gammill,* and *Robinson.* The trial court did not abuse its discretion in striking the affidavit.

The Clinic asserted in their motion for summary judgment that, after adequate time for discovery, appellants had produced no evidence of: a "duty to conform to a certain standard of care," "a failure to conform to the required standard," and "a reasonably close causal connection between the conduct and the injury," all of which are essential elements of appellants' negligence cause of action against the Clinic. Since it was proper for the trial court to strike Dr. Fazzino's affidavit as unreliable because of its omissions, appellants failed in meeting their burden of producing some evidence on each essential element of their negligence cause of action. The trial court did not err in granting summary judgment in favor of the Clinic on appellants' negligence claim.

■ Appellants further argue that the Edwards' no-evidence motion for summary judgment did not comply with Rule 166a(i). Specifically, appellants urge that the Edwards' motion was conclusory and, therefore, would not support summary judgment. As evidence of the motion's general and conclusory nature, appellants point to the Edwards' challenge of every element of their DTPA claim, urging that there can be no question of appellants' consumer status. Also, the motion lists a violation of TEX.INS.CODE ANN. art. 21.21 (Vernon 1981 & Supp.2000) as an element with no evidentiary support, and appellants argue that there is no pleading which possibly suggests a claim under that provision. Appellants further argue that they were not allowed adequate time for discovery.

■ The Edwards' motion also states, however, that, in order for appellants to prevail in a negligence cause of action, they must establish by evidence of probative force the following elements: (1) a

duty owed by the Edwards to appellants; (2) a breach of that duty; and (3) proximate causation resulting in compensable damages to appellants. The motion then states that, "[a]fter adequate time for discovery, [appellants] cannot provide evidence to support any of the aforementioned elements of negligence."

Under Rule 166a(i), a party:

[M]ay move for summary judgment on the ground that there is no evidence of *one or more* essential elements of a claim or a defense on which an adverse party would have the burden of proof at trial.

Rule 166a(i) "requires the movant to *specify the essential element or elements* of a claim or defense to which there is no evidence." (Emphasis in original) *Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 436 (Tex.App.—Houston [14th Dist.] 1999, no pet'n). In *Lampasas,* the movant's no-evidence motion for summary judgment stated that there was no evidence of any duty, breach, or causation. The court held that the motion provided notice to the non-movant that "he must come forward with some evidence on these challenged elements, or his negligent causes of action would fail." *Lampasas v. Spring Center, Inc., supra* at 436. The Edwards' motion meets the requirements of Rule 166a(i).

We also hold that there has been more than "adequate time for discovery" in this case. Pancho died on July 5, 1995, and the lawsuit was filed on July 7, 1997. Appellants did not begin discovery as to the Edwards until September 10, 1998. Appellants filed a motion for continuance on October 28, 1998, for the purpose of conducting discovery, and the trial court granted their motion. Dr. Fazzino's affidavit was taken on December 1, 1998. The summary judgment proceeding was held on January 6, 1999, approximately 18 months after the suit was filed, and approximately three and one-half years after Pancho's death. Appellants' argument is overruled.

■ Appellants also insist that both the Clinic's and the Edwards' no-evidence motions for summary judgment are not supported by competent summary judgment evidence. Rule 166a(i) does not permit summary judgment proof from the movants.

Because appellants failed to produce summary judgment evidence raising a genuine issue of material fact on their negligence claim, we overrule appellants' first three contentions.

*Res Ipsa Loquitur*

■ Appellants argue that the trial court erred in granting both the Clinic's and the Edwards' motions because the doctrine of res ipsa loquitur applies herein precluding summary judgment. We disagree. The Fort Worth Court of Appeals specifically held in *Downing v. Gully, supra* at 185, that "the administration of anesthetics ... [is] not in the common knowledge of a layman and, therefore, the doctrine does not apply." See *Haddock v. Arnspiger,* 793 S.W.2d 948, 951 (Tex.1990). This argument is overruled.

*Breach of Contract and Implied Warranty Claims*

Appellants argue that genuine issues of material fact existed on appellants' breach of contract and implied warranty claims against both the Clinic and the Edwards. Appellants' second amended original petition alleges that each appellee:

[F]ailed to perform the work for which the [appellee] was engaged by [appellants] in a good and workmanlike manner, thereby materially breaching their contract with [appellants] and resulting in their damages as set forth below.

The damages claimed by appellants include the value of Pancho and the loss of income generated by Pancho. In their motions for no-evidence summary judgment, the Clinic and the Edwards asserted that appellants had no evidence of the

existence of a contractual duty and breach of that duty.

■ Although the principles of contract and tort causes of action are well settled, the distinction between the two is not always clear. We must look to the substance of the cause of action and not the manner in which it is pleaded. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617–18 (Tex.1986).

■ The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury suffered usually determines the existence of a cause of action in tort. Tort obligations are generally "obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." *Clary Corporation v. Smith*, 949 S.W.2d 452, 463 (Tex.App.—Fort Worth 1997, pet'n den'd), quoting *Southwestern Bell Telephone Company v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991). If appellees' conduct would give rise to liability independent of whether a contract existed between the parties, then appellants' claim sounds in tort. *Clary Corporation v. Smith, supra.*

The duty that appellants alleged the Clinic and the Edwards breached in this case was one imposed by law, not contract. If appellees had breached this duty, their "breach would give rise to liability independent of whether a contract existed between [appellants] and [appellees]." *Clary Corporation v. Smith, supra* at 463. We hold appellants' claim sounds in tort, not contract.

■ Moreover, without an express agreement in the record, we decline to recognize an implied warranty for veterinarian services. See *Dennis v. Allison*, 698 S.W.2d 94 (Tex.1985) (declining to recognize an implied warranty in connection with medical services when a patient was sexually assaulted and beaten by her psychiatrist); *Downing v. Gully, supra*(adopting the standard applied to physicians and

surgeons in medical malpractice cases in a veterinary negligence case). Having already discussed appellants' negligence claims, appellants' argument is overruled.

### DTPA Claim Against the Edwards

■ Appellants contend that the trial court erred in granting the Edwards' motion for summary judgment on their DTPA claim. Appellants assert that the Edwards "represented themselves as a reputable and established service company which was capable of caring for Pancho and standing him at stud, collecting, storing and selling his semen, and providing reproductive services." Appellants argue that, since Pancho died while in the Edwards' custody and care, they were not capable of caring for Pancho as represented. In addition, appellants state that evidence existed that the Edwards "took an unconscionable course of action." We disagree.

In reviewing the record before us, we have found no evidence of any false, misleading, or deceptive act or practice enumerated in Section 17.46 of the DTPA. We have also been unable to find any evidence of unconscionability. Section 17.45(5) defines an unconscionable action or course of action as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

The Edwards provided routine boarding and care for Pancho at their breeding facility. Appellants offer no evidence that the Edwards were incompetent in providing genetic services or routine boarding and care. Additionally, appellants offer no evidence of any representation made by the Edwards which encompasses the performance of veterinary care, surgical treatment, or postoperative treatment. The Edwards informed Hight of the problem with Pancho's horns after almost one year of caring for him, and there is evidence in the record that Pancho's horns were growing into the back of his neck.

This information was not false, misleading, or deceptive and does not constitute an unconscionable action by the Edwards. Appellants' final contention is overruled.

The judgment of the trial court is affirmed.