ACCEPTED
03-13-00498-CV
6107077
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/16/2015 11:39:01 PM
JEFFREY D. KYLE
CLERK

No. 03-13-00498-CV

# In the
# Third Court of Appeals
# at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/16/2015 11:39:01 PM
JEFFREY D. KYLE
Clerk

RONNIE LAWSON AND LEAH LAWSON,

*Appellants*,

v.

BENJAMIN KEENE, KRISTI KEENE, GRETCHEN GAYLE GULLEKSON,
DAYNA MARIE TWYMAN AND KWI-8, L.L.C.
D/B/A KELLER WILLIAMS REALTY,

*Appellees*.

On Appeal from the 200th District Court
of Travis County, Texas

## MOTION FOR EN BANC REHEARING

Don Cruse
State Bar No. 24040744
LAW OFFICE OF DON CRUSE
1108 Lavaca Street,
  Suite 110-436
Austin, Texas 78701
[Tel.] (512) 853-9100
[Fax] (512) 870-9002
don.cruse@texasappellate.com

COUNSEL FOR APPELLANTS

# TABLE OF CONTENTS

Table of Contents ...........................................................................................i

Index of Authorities......................................................................................ii

Introduction...................................................................................................1

Factual Background .......................................................................................2

I.   The En Banc Court Should Clarify That Panels Can Examine, in the First Instance, Whether a Prior Panel Decision Still Rests on a Solid Legal Foundation Today........................................................................3

   A.   The rule announced by the panel ..............................................3

   B.   Stare decisis is about the consistency of legal principles............5

   C.   Texas appellate panels should be allowed to perform this core part of the judicial function. ...................................................7

II.  The Standard for Reviewing a No-Evidence Summary Judgment Is Now Confused in Austin....................................................................10

   A.   The procedural posture of this summary judgment .................10

   B.   The record is not limited to the response evidence..................10

   C.   Contradicting the Supreme Court's test, the panel's approach would complicate, not simplify, litigation ...............................13

Prayer ..........................................................................................................17

Certificate of Service ..................................................................................18

Certificate of Compliance...........................................................................18

i

# INDEX OF AUTHORITIES

## Cases

*Am. Tobacco Co. v. Grinnell*,
    951 S.W.2d 420 (Tex. 1997) ..................................................14

*Ayeni v. State*,
    440 S.W.3d 707 (Tex. App.—Austin 2013, no pet.) .................5

*Binur v. Jacobo*,
    135 S.W.3d 646 (Tex. 2004) ..................................................13

*Boerjan v. Rodriguez*,
    436 S.W.3d 307 (Tex. 2014) ..................................................12

*Buck v. Palmer*,
    381 S.W.3d 525 (Tex. 2012) ............................................14, 16

*Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*,
    309 S.W.3d 619 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ...........5

*DeGrate v. Executive Imprints, Inc.*,
    261 S.W.3d 402 (Tex. App.—Tyler 2008, no pet.) ...................8

*Earthkeepers, LLC v. Haag*, 2014 Tex. App. LEXIS 3997,
    2014 WL 1432663 (Tex. App.—Austin Apr. 11, 2014, pet. denied).......12

*Epps v. Fowler*,
    351 S.W.3d 862 (Tex. 2011) ...........................................4, 5, 6

*Gonzalez v. Ramirez*, ____ S.W.3d ____, No. 14-0102,
    2015 Tex. App. LEXIS 441 (Tex. May 8, 2015) ......................11

*Gonzales v. Servs. Lloyds Ins. Co.*, No. 14-08-00377-CV, 2009 WL 1493039
    (Tex. App.—Houston [14th Dist.] May 21, 2009, no pet.) (mem. op.) .....8

*Hight v. Dublin Veterinary Clinic*,
    22 S.W.3d 614 (Tex. App.—Eastland 2000, pet. denied) ........13

*International Group Partnership v. KB Home Lone Star, LP,*
    295 S.W.3d 650 (Tex. 2009) ....................................................4

*Inv. Retrievers, Inc. v. Fisher*, No. 03-13-00510-CV, 2015 Tex. App. LEXIS 6430
(Tex. App.—Austin June 25, 2015, no pet. h.)........................................12

*KCM Fin. LLC v. Bradshaw*,
457 S.W.3d 70 (Tex. 2015) ...............................................................14

*King Ranch, Inc. v. Chapman*,
118 S.W.3d 742 (Tex. 2003) ..............................................................13

*Mack Trucks v. Tamez*,
206 S.W.3d 572 (Tex. 2006) ..............................................................11

*McAtee v. City of Austin*, No. 03-10-00496-CV, 2013 Tex. App. LEXIS 12518,
2013 WL 5855638 (Tex. App.—Austin Oct. 10, 2013, no pet.)..............12

*Merriman v. XTO Energy, Inc.*,
407 S.W.3d 244 (Tex. 2013) ...........................................................14-15

*Neely v. Wilson*,
418 S.W.3d 52 (Tex. 2013) ............................................................14, 16

*Public Util. Comm'n v. Gulf States Utils. Co.*,
809 S.W.2d 201 (Tex. 1991) ................................................................4

*Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 Tex. App. LEXIS 14518,
2013 WL 6465637 (Tex. App.—Austin Nov. 27, 2013, pet. denied) ......12

*Ross v. St. Luke's Episcopal Hosp.*, No. 13-0439, ____ S.W.3d ____,
58 Tex. Sup. Ct. J. 766 (Tex. May 1, 2015) .........................................6

*Sierra Associate v. Hardeman*, No. 03-0800324-CV, 2009 WL 416465
(Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.) ...............3, 4, 5, 6

*Sw. Bell Tel. Co., LP v. Mitchell*,
276 S.W.3d 443 (Tex. 2008) ................................................................6

*Tex. Mut. Ins. Co. v. Ruttiger*,
381 S.W.3d 430 (Tex. 2012) ................................................................6

*Timpte Industries v. Gish*,
286 S.W.3d 306 (Tex. 2009) ..............................................................11

*Webb v. Robins*, No. 03-07-00686-CV, 2008 WL 2777399
(Tex. App.—Austin July 17, 2008, no pet.) (mem. op.) ...............11, 12-13

*Willis v. Owen*,
43 Tex. 41 (Tex. 1875) ...............................................................................6

*Wright's Adm'x v. Donnell*,
34 Tex. 291 (1870) ......................................................................................6

## Constitutions, Statutes, and Rules

TEX. R. APP. P. 41.2(c) .................................................................................8

TEX. R. APP. P. 47.1.................................................................................7, 8

TEX. R. APP. P. 47.7(b) ...............................................................................7

TEX. R. CIV. P. 166a(i) ...............................................................................13

5TH CIR. LOCAL R. 47.5.4 ...........................................................................7

5TH CIR. LOCAL R. 47.6 ..............................................................................7

## Other Authorities

"Annual Statistical Report for the Texas Judiciary,"
Office of Court Administration (2014)...................................................8n.

Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE (2d ed. 2001) ......1

"Judicial Workload Statistics,"
United States Court of Appeals for the Fifth Circuit ( June 2014) .........8n.

## INTRODUCTION

If the Court is entertaining Fifth Circuit notions of how panels relate to the *en banc* court, it might ponder the word they have developed to bridge the gap: "enbancworthy."[1] This case is that. It features: [1] a serious inconsistency within this court's holdings; [2] conflict between the panel's narrow view of no-evidence summary judgment records and the Supreme Court's very different approach, which leaves Austin trial courts facing conflicting commands; and [3] an underlying subject matter of broad importance involving a real-estate form contract.

And this case particularly warrants *en banc* consideration because the panel announces and applies a singularly broad rule of local practice, one that could reshape how complex legal issues are briefed and argued to this Court. The panel says that mere panels (such as it) are powerless to examine whether any previous panel decision still rests on solid legal ground, absent some "clearly on point" supreme court authority or unless this *en banc* court intervenes (Op. 3). This motion explains how this rule is at odds with Texas principles of *stare decisis* and unique features of Texas's appellate system. But if it is to be Third Court practice that only the *en banc* court can consider arguments that challenge the legal foundation of any prior panel decision, it ought to be the *en banc* court that says so.

---

[1] Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE 314 (2d ed. 2001).

## Factual Background

The claim is that the buyer's own agent, the seller's agent, and the sellers misrepresented a key feature of the house, both by making affirmative claims that were false and by failing to disclose material facts to induce this sale. The central feature of the home listing was the sunroom—counted as one of the home's living areas and lumped together in the home's claimed square footage. This roughly 450-square-foot sunroom is what pushed the house above the square-footage threshold that these buyers had instructed their agent was their minimum. And as Gullekson, however reluctantly, eventually admitted, CR458 & CR463, square footage is (obviously) a factor in pricing residential real estate.

The sellers were under a statutory duty to disclose certain facts. The agents held fiduciary duties, including duties to disclose. As an email chain attached to the motion for summary judgment suggests, they hid the details, with the email thread even including an instruction <u>not</u> to bring up a square-footage discrepancy that came to their attention during the lending-approval process.

The defendants contend that they were immunized from any liability—even against claims that the Lawsons' own agent breached fiduciary duties—by a non-negotiable clause included in a TREC form contract between the seller and buyer describing what repairs would be needed before closing. The defendants also argued that the form contract entitled them to shift fees against anyone who might question their conduct—even against Leah, who did not sign the contract.

The panel affirms the judgment on a different basis, saying that under its (mistaken) view of the summary-judgment standard, it could only consider the three documents attached to the Lawsons' response papers—not the voluminous other documents, such as the email exchange among the agents, the written representations, and other depositions submitted by the movants. (Op. 3). On fees, the panel further says that it lacks power to examine whether the legal reasoning behind the Court's 2008 *Sierra Associate* decision remains viable after more recent Texas Supreme Court guidance about how to interpret a fee-shifting provision in this type of form contract. (Op. 9). In the panel's formulation, only the *en banc* court can do so. (Op. 9).

## I. THE *EN BANC* COURT SHOULD CLARIFY THAT PANELS CAN EXAMINE, IN THE FIRST INSTANCE, WHETHER A PRIOR PANEL DECISION STILL RESTS ON A SOLID LEGAL FOUNDATION TODAY.

### A. The rule announced by the panel

The attorney's fee question sets the stage for the panel's announcement of this rule. In 2008, a prior panel had decided *Sierra Associate v. Hardeman*, which reasoned from principles of administrative law about the meaning of the contract between the buyer and seller of real estate. No. 03-0800324-CV, 2009 WL 416465 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.). There was no discussion of the parties' intent. To the contrary, *Sierra* made clear that its opinion rested on the idea that, "[b]ecause the contract at issue was promulgated by rule through the

agency rulemaking process, we construe the contract as an administrative rule." *Id.* From that premise, *Sierra* then applied robust administrative deference, saying that a court will "defer to an agency's interpretation of its own rule unless it is plainly erroneous or inconsistent with the rule." *Id.* (citing *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991)). The legal principles applied in *Sierra* concerned agency deference, not party intent.

In *Epps v. Fowler*, the Supreme Court examined a later version of the same form contract and focused on its fee-shifting language. 351 S.W.3d 862 (Tex. 2011). The legal principles that it applied, however, are incompatible with *Sierra*. Instead of treating this contract as a regulation accorded agency deference, the Supreme Court looked to the parties' intent. *Id.* at 865-66. *Epps* relied heavily on *International Group Partnership v. KB Home Lone Star, LP,* another contract-interpretation case, in which the Court stated,"[a] contract's overriding purpose is to capture the parties' intent, meaning we must construe it in light of how the parties meant to construe it." 295 S.W.3d 650, 657-58 (Tex. 2009).

The Lawsons contend that the legal rationale for *Sierra* is now unsound, in light of this intervening authority. The panel does not deny that the legal analysis about agency intent that underpins *Sierra* is untenable in light of *Epps*. Instead, it says that minor factual or procedural differences deprive the panel of power to consider whether the legal analysis of *Sierra* remains good law:

The question before the Court in *Epps* was "whether a defendant is a prevailing party entitled to attorney's fees when the plaintiff nonsuits a claim without prejudice," a question distinct from the one before us.

(Op. 8-9). From that premise, the panel says that it must apply *Sierra* unless and until some higher court speaks even more precisely to the same question:

> Because the Lawsons have not drawn our attention to a supreme court holding clearly on point, we decline to revisit the *Sierra* decision. *See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Absent a decision from a higher court or this court sitting *en banc* that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court."); *see also Ayeni v. State*, 440 S.W.3d 707, 717 (Tex. App.—Austin 2013, no pet.) (Pemberton, J., concurring) ("We may not overrule a prior panel opinion of this court absent an intervening change in the law by the Legislature or a higher court or by decision of this court sitting en banc.").

(Op. 9). But if *Epps*, which dealt with a newer version of the same clause of the very same form contact as *Sierra*, is not "clearly [enough] on point," what is?

And, not only did the panel rely on unsound law, it extended *Sierra* to new contexts—imposing fees against a person who did not even sign the contract and interpreting this agency-written contract to deter enforcement of fiduciary duties created by the same agency elsewhere in its rules. The panel does not explain how extending *Sierra* to these new alignments of parties or new claims fits Texas law.

## B. *Stare decisis* is about the consistency of legal principles.

What is entitled to *stare decisis* effect is a case's legal holding. But when the panel says that the Lawsons "do not argue … the holding of *Epps* contradicts our

holding in *Sierra*," (Op. 8) (emphasis added), it takes an unduly narrow view of how two case holdings might conflict.

The Texas Supreme Court has emphasized that *stare decisis* attaches to the legal principles <u>behind</u> the outcome. *Ross v. St. Luke's Episcopal Hosp.*, No. 13-0439, ____ S.W.3d ____, 58 Tex. Sup. Ct. J. 766 (Tex. May 1, 2015). And later courts can examine whether that legal foundation remains solid. "[W]e are called upon to re-evaluate common-law rules, giving deference to *stare decisis* when warranted, but <u>departing when the prior rule no longer furthers the interests of efficiency, fairness, and legitimacy</u>. As we noted 142 years ago, '<u>When the reason of the rule fails, the rule itself should cease</u>. *Cessante ratione legis, cessat ipsa lex.*.'" *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 457 (Tex. 2012) (Willett, J., concurring) (emphasis added) (citing *Wright's Adm'x v. Donnell*, 34 Tex. 291, 306 (1870)).

Courts have an ongoing duty to examine the legal soundness of the rules they apply. "[U]pon no sound principle do we feel at liberty to perpetuate an error, into which either our predecessors or ourselves may have unadvisedly fallen, merely upon the ground of such erroneous decision having been previously rendered." *Sw. Bell Tel. Co., LP v. Mitchell*, 276 S.W.3d 443, 447 (Tex. 2008) (quoting *Willis v. Owen*, 43 Tex. 41, 48-49 (Tex. 1875)). A panel of elected Texas appellate judges should not be barred from fulfilling this part of the judicial role.

## C. Texas appellate panels should be allowed to perform this core part of the judicial function.

Preventing panels from examining the legal basis for prior cases poorly fits Texas appellate practice. First, it ignores the differences between how publication decisions are made in the Texas and federal courts. The Texas appellate courts do not have the option, available in some other systems, of summarily affirming without explanation. *Cf.* 5TH CIR. LOCAL R. 47.6 (affirmance without opinion). Nor can Texas appellate courts issue unpublished, non-precedential decisions for those cases where the court does not wish intermediate legal holdings on procedural points to ripple through the law. *Compare* TEX. R. APP. P. 47.7(b) (all after 2003 are precedential), *with* 5TH CIR. LOCAL R. 47.5.4 (unpublished opinions after 1996 are not precedent). Rather than permit summary disposition, the Texas rules require written opinions addressing every necessary issue. TEX. R. APP. P. 47.1.

Critically, the federal courts that follow this principle, such as the Fifth Circuit, have safety valves to dispose of such routine cases without risking serious damage to the jurisprudence—they can label a case unpublished or even just summarily affirm. The Fifth Circuit is, like other federal circuits, built as a machine for disposing of cases <u>without creating precedent</u>. Its most recent statistical report shows that it issued 3037 opinions in the year ending 2014, but that only 404 of

those were given the status of precedential opinions.[2] By contrast, the Texas system issued more than 5000 such opinions last year, with the Third Court alone issuing more than 600.[3]

The better view is that panels <u>can</u> consider the legal foundation of those precedential Texas cases, grappling with their reasoning under principles of *stare decisis*, to determine the correct law to apply to the facts before them. By contrast, the panel's approach would make every short footnote brushing aside a *pro se* litigant's off-kilter procedural theory into binding writ that a mere panel cannot avoid—no matter whether the legal reasoning can withstand more serious study once the Court is presented with more helpful legal arguments or, on its own, recognizes some unanticipated implications. Having so many precedential opinions makes it all the more important that future panels have flexibility to digest them.

Second, the Texas *en banc* rule does not have provisions for frequent *en banc* sittings every time the courts must reconcile a new but far-reaching supreme court decision with prior caselaw. *See* TEX. R. APP. P. 41.2(c). If anything, that rule suggests there should be few such sittings—not a flurry of them to process each broad pronouncement from the Supreme Court that might ripple through the law.

---

[2] "Judicial Workload Statistics," United States Court of Appeals for the Fifth Circuit, at 11 ( June 2014), *available at* http://www.ca5.uscourts.gov/docs/default-source/forms-and-documents---clerks-office/statistics/arstats-2014.pdf  In addition, almost 2000 other cases were disposed of by the judges without an opinion, and over 1500 were disposed of by the clerk's office. *Id.* at 6. The vast bulk of the court's work is processing cases that do not make law.

[3] "Annual Statistical Report for the Texas Judiciary," Office of Court Administration (2014), *available at* http://www.txcourts.gov/media/885306/Annual-Statistical-Report-FY-2014.pdf.

Third, *en banc* math gets silly when divided among fourteen intermediate courts, only five of which have total membership large enough that an *en banc* could even theoretically outvote a panel. Austin is not in that group, instead sitting with the Thirteenth Court at a membership of six justices, where each panel makes 50% of the *en banc*. Two other courts have four justices, so a panel comprises 75% of the *en banc* and in practical terms might as well reach the question. The final five of Texas's appellate courts have three justices—so the *en banc* <u>is</u> the panel.

The small sizes of Texas appellate courts do not suggest a need to adopt the Fifth Circuit's draconian rule about prior panels in order to maintain consistency. Nor does it serve the interests of the courts to deter litigants from being candid about the need for the Court to reconcile its web of older cases with more recent legal developments by subjecting them to extra procedural steps to reach an *en banc* court that might or might not offer the substantive answer that Rule 47.1 promises to participants in Texas's appellate system.

## II.  THE STANDARD FOR REVIEWING A NO-EVIDENCE SUMMARY JUDGMENT IS NOW CONFUSED IN AUSTIN

### A.  The procedural posture of this summary judgment

This case involved multiple cross-motions for summary judgment briefed on an overlapping schedule, argued at one hearing, and resolved in one order. The defendants advanced both traditional grounds (attaching a significant volume of evidence) and no-evidence grounds. The Lawsons presented their own no-evidence motion about certain issues. The defendants responded to the Lawsons' no-evidence motion by attaching just a single exhibit—labeled "Exhibit L", CR408, building on the larger record assembled for the traditional motion. The next day, the Lawsons filed their response, which added a few new pieces of evidence to the stack—one more deposition, a new affidavit from Ronnie Lawson, and a recent TCAD appraisal report. CR440-522. These motions were heard and decided together. Under controlling precedent, the panel should have reviewed the whole summary judgment record when determining whether a fact question exists.[4]

### B.  The record is not limited to the response evidence

The panel held that, when reviewing the no-evidence grounds, it was limited to consider <u>only</u> the three specific exhibits that the Lawsons included in their own response rather than the full summary-judgment record for these cross-motions:

In determining whether the Lawsons have raised more than a scintilla

---

[4] The motion for panel rehearing argues that even this limited record should have defeated the no-evidence motion. Because that relates to evidentiary sufficiency, it is addressed to the panel.

of evidence regarding the grounds on which the defendants based their no-evidence motion, <u>we consider only the summary-judgment proof produced in the Lawsons' response</u>. *See Webb v. Robins*, No. 03-07-00686-CV, 2008 WL 2777399, at *5 (Tex. App.—Austin July 17, 2008, no pet.) (mem. op.); *see also Gonzales v. Servs. Lloyds Ins. Co.*, No. 14-08-00377-CV, 2009 WL 1493039, at *2 (Tex. App.—Houston [14th Dist.] May 21, 2009, no pet.) (mem. op.); *DeGrate v. Executive Imprints, Inc.*, 261 S.W.3d 402, 408 (Tex. App.—Tyler 2008, no pet.) (citing *Webb*).

(Op. 3) (emphasis added). That string of cases comes from a Rule 38.7 letter submitted by the Appellees.

The court may observe that these cases end in 2009. As it happens, that year brought a decision in *Timpte Industries*, where the Supreme Court clarified that a statement it had made about summary-judgment records in general was fully applicable to no-evidence motions:

> When reviewing <u>a no-evidence summary judgment</u>, we "review the <u>evidence presented by the motion and response</u> in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not."

*Timpte Industries v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (emphasis added) (quoting *Mack Trucks v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). The supreme court still follows that principle. *E.g.*, *Gonzalez v. Ramirez*, ___ S.W.3d ___, No. 14-0102, 2015 Tex. App. LEXIS 441, at *9-10 (Tex. May 8, 2015) ("We review the evidence presented by a no-evidence motion for summary judgment and

response…"); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311-12 (Tex. 2014). The panel opinion cannot be squared with this supreme court authority.

In failing to address *Timpte*, the panel also quietly disregards several opinions from this Court that have echoed the supreme court's formulation. *See Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 Tex. App. LEXIS 14518, at *12-13, 2013 WL 6465637 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (noting "movant is not required to produce proof" but that "[w]e review the evidence presented by the motion and response…"); *see also Inv. Retrievers, Inc. v. Fisher*, No. 03-13-00510-CV, 2015 Tex. App. LEXIS 6430, at *8-9 (Tex. App.—Austin June 25, 2015, no pet. h.) ("motion and response") (quoting *Mack Trucks*); *Earthkeepers, LLC v. Haag*, 2014 Tex. App. LEXIS 3997, at *9-11, 2014 WL 1432663 (Tex. App. —Austin Apr. 11, 2014, pet. denied) (same); *McAtee v. City of Austin*, No. 03-10-00496-CV, 2013 Tex. App. LEXIS 12518, at *8, 2013 WL 5855638 (Tex. App. —Austin Oct. 10, 2013, no pet.) (same). This inconsistency among this Court's own cases also warrants *en banc* scrutiny.

And while the Court need not evaluate <u>why</u> *Webb* reached the wrong result to conclude that it conflicts with current supreme court guidance, it turns out to be a cautionary tale about why later panels must be able to scrutinize the legal soundness of the reasons behind a prior panel opinion. That's because *Webb* applied the <u>outcome</u> of a sister court's opinion without evaluating whether the <u>legal reasoning</u> was still valid in light of intervening authority. *See Webb*, 2008 Tex. App. LEXIS

5342, at *14-15 (citing *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614, 619 (Tex. App.—Eastland 2000, pet. denied)). The two steps of *Hight*'s legal reasoning were: (1) it expressly declined to follow sister courts that had viewed no-evidence motions as analogous to directed verdicts, 22 S.W.3d at 618; and (2) it assumed that Rule 166a(i) would automatically transform a no-evidence motion that attached evidence into a traditional motion, reasoning that meant no movant could even have evidence to consider, *id.* at 618-19. Both of those premises were already unsound at the time of *Webb*. The Texas Supreme Court had embraced the more lenient direct-verdict analogy. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). And it had held that a Rule 166a(i) movant could, if they wished, attach evidence without having their motion automatically converted to something else. *Binur v. Jacobo*, 135 S.W.3d 646, 651-52 (Tex. 2004) (noting that evidence attached to the motion need not be considered "unless it creates a fact question"). This Court should be cautious before embracing a rule under which *Webb* would have been bound to follow an unsound opinion—or which would bind current panels to *Webb*.

## C. Contradicting the Supreme Court's test, the panel's approach would complicate, not simplify, litigation

The panel may assume that its rule simplifies things for trial and appellate courts. But the Texas Supreme Court has embraced a <u>different</u> simplification, one that cannot be reconciled with the panel's approach.

13

The supreme court has reasoned that, when an issue is presented both by a no-evidence motion and by a traditional summary-judgment motion, the task of the reviewing court should be simpler, not more complex. Traditional summary judgment requires two steps of analysis: first, a traditional movant must bring forward conclusive proof, and only then does a court consider the second question whether a fact question exists. *E.g.*, *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). And a no-evidence motion has one step: does a fact question exists? *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).

Because a non-movant can defeat either kind of motion by showing that a fact question exists, the supreme court has observed that having both motions in play should simplify the reviewing court's task:

> Though these burdens vary for traditional and no-evidence motions, the summary judgment motion here was a hybrid motion and both parties brought forth summary judgment evidence; therefore, the differing burdens are immaterial and the ultimate issue is whether a fact issue exists.

*Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013); *Buck v. Palmer*, 381 S.W.3d 525, 527 & n.2 (Tex. 2012) (where both kinds of motion were in play, "the differing burdens of the two forms of summary judgment are of no import here. The ultimate question is simply whether a fact issue exists.").

Fairly read, this is also the observation made in *Merriman v. XTO Energy, Inc.,* 407 S.W.3d 244, 248 (Tex. 2013), an opinion released between *Buck* and *Neely* making the practical point that it makes sense to start with no-evidence issues. The

14

panel opinion, however, cites *Merriman* to suggest the proper record is limited—a proposition that it does not support:

> We begin by reviewing the evidence that the Lawsons produced in response to the defendants' no-evidence motion for summary judgment. *See Merriman*, 407 S.W.3d at 248.

(Op. 3). *Merriman* does <u>not</u> say that it restricted its analysis to a subset of the record. Instead, it says that when (as here) "both parties move summary judgment and the trial court grants one motion and denies the other, we review <u>all the summary judgment evidence</u>…" *Merriman*, 407 S.W.3d at 248 (emphasis added).[5]

If the panel's approach is right, then the Supreme Court is wrong that having both kinds of motion present simplifies things. The Supreme Court's logic depends on the shared element of the traditional and no-evidence motions being tested against a shared record. If they were instead measured against different records, it would no longer be true that the reviewing court need only conduct one analysis. Instead, there would be <u>two divergent records</u> every time a no-evidence motion is filed: the combined record of motion and response, and the subset consisting merely of the response alone.[6]

---

[5] While *Merriman* does suggest that a court start with no-evidence grounds where possible, 407 S.W.3d at 248, that is a consequence of the practical point noted by *Buck* or *Neely*—that having both motions means "there is no need to analyze whether the movant satisfied its burden under the traditional motion." *Id.*

[6] To be sure, it is possible that a response would attach documents that perfectly mirror those of the motion. But that would relegate the supreme court's simplification to a rare and special edge case—not the general principle it claims to be.

15

Indeed, under the panel's approach, reversing a grant of summary judgment could require <u>three</u> steps of analysis, not one: (1) does the subset of the record attached to a response by itself raise a fact question? (2) does the submission the movant makes in any traditional motion by itself present conclusive proof on those elements? and (3) does the total record spanning both motion and response defeat that conclusive proof by showing that at least some fact question remains? Rather than *Neely*'s observation of "differing burdens [becoming] immaterial" as shared terms that can be factored out of the equation, 418 S.W.3d at 59, the panel's rule would multiply a reviewing court's burdens by splintering the record.

The solution is straightforward: As the Supreme Court has urged, a trial or appellate court should consider the whole summary judgment record ("motion and response"). By doing so, the analysis can be reduced to asking "simply whether a fact issue exists." *Buck*, 381 S.W.3d at 528 n.2. If it does, the movant can prevail on neither motion. If it does not, the movant wins the no-evidence motion (and the court need not worry about whether the movant also had the conclusive proof required for a traditional motion).

## PRAYER

The Court should grant rehearing *en banc* and, based on the substantive arguments that the panel did not reach, reverse and remand.

Respectfully submitted,

/s/ Don Cruse

_____

Don Cruse
State Bar No. 24040744
LAW OFFICE OF DON CRUSE
1108 Lavaca Street, Suite 110-436
Austin, Texas 78701
[Tel.] (512) 853-9100
[Fax] (512) 870-9002
*don.cruse@texasappellate.com*

COUNSEL FOR APPELLANTS

## CERTIFICATE OF SERVICE

I certify that on July 16, 2015, this **Motion for En Banc Rehearing** was sent by electronic service to appellate counsel of record:

> D. Todd Smith
> Smith Law Group, P.C.
> 1250 Capital of Texas Highway South
> Three Cielo Center, Suite 601
> Austin, Texas 78746
> *Lead Counsel for Appellees*

/s/ Don Cruse

_____

Don Cruse

## CERTIFICATE OF COMPLIANCE

This brief complies with Texas Rules of Appellate Procedure 9.4 because the sections covered by the rule contain 4243 words. The font used in the body of the brief is no smaller than 14 points, and the font used in the footnotes is no smaller than 12 points.

/s/ Don Cruse

_____

Don Cruse